IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

★ FEB 0 9 2009 ★

US DISTRICT COURT E.D.N.Y

**BROOKLYN OFFICE**

ILYA DALL,

   Plaintiff,

  -against-

ROBERTO ALOMAR,

   Defendant.

CIVIL ACTION NO.



TRAGER, J.

AZRACK, M.J.

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, FED. R. CIV. P. 81(c), and Local Civil Rule 81.1 of the United States District Courts for the Southern and Eastern Districts of New York, Defendant Roberto Alomar files this Notice of Removal of the above-captioned action, which was filed on January 30, 2009 and which is pending in the Supreme Court of the State of New York, County of Queens, to remove this case to the United States District Court for the Eastern District of New York. In support of this Notice, Defendant states as follows:

**INTRODUCTION**

   1. <u>Complaint</u>. Plaintiff Ilya Dall filed her complaint on January 30, 2009. Plaintiff alleges that she suffered personal injuries due to the negligence of Defendant. Plaintiff asserts claims for negligence and seeks compensatory and punitive damages. A copy of the Summons and Complaint is annexed hereto as **Exhibit "A."**

586299.1

Dockets.Justia.com

2.      Service. Defendant was first made aware of Plaintiff's filed Summons and Complaint, a copy of which is annexed, no earlier than January 30, 2009. The annexed Summons and Complaint has not yet been formally served.

## DIVERSITY JURISDICTION AS BASIS FOR REMOVAL

3.      Basis for Jurisdiction in this Court. The basis for jurisdiction in this Court is diversity of citizenship under 28 U.S.C. § 1332(a).

A.      Diversity of Citizenship

Plaintiff

At the time Plaintiff's Complaint was filed and at the time of this removal, Plaintiff Ilya Dall was and is an individual who resides at 17 North Drive, Whitestone, New York 11357 and is, therefore, a citizen of the State of New York. (See **Ex. A** at ¶2).

Defendant

At the time Plaintiff's Complaint was filed and at the time of this removal, Defendant Roberto Alomar was and is an individual who resides at 5420 West Shore Drive, New Port Richey, Florida 34652, and is, therefore, a citizen of the State of Florida.

Accordingly, there is complete diversity of citizenship between Plaintiff Ilya Dall and Defendant Roberto Alomar.

B.      Amount in Controversy

The amount in controversy exceeds $75,000, exclusive of interest and costs. The Complaint specifically seeks judgment for compensatory damages in an amount that "exceeds the jurisdictional limits of all lower courts" and punitive damages "in an amount not less than fifteen million ($15,000,000) dollars." (See **Ex. A** ¶¶ 68; 72; 77; 82).

586299.1

Accordingly, the judgment sought by Plaintiff exceeds the $75,000 jurisdictional threshold required to remove this action to the United States District Court.

## ALL FEDERAL REMOVAL REQUIREMENTS HAVE BEEN MET

4. <u>Notice Given</u>. Immediately upon the filing of this Notice of Removal, Defendant Roberto Alomar will give written notice of same to Plaintiff's attorney and will file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of Queens, where the state court action has been pending.

5. <u>Removal is Timely</u>. This Notice of Removal is timely filed with this Court pursuant to 28 U.S.C. § 1446(b), because it was filed within thirty days of the date on which Defendant Roberto Alomar first received, through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which Plaintiff's action is based.

6. <u>Venue</u>. The venue of this removal action is proper pursuant to 28 U.S.C. §§ 1441(a) and (c), as the United States District Court for the Eastern District of New York embraces Queens County, where the state court action has been pending.

7. <u>Pleadings and Process</u>. Under 28 U.S.C. § 1446(a), the removing defendant is required to attach to this notice a copy of all process, pleadings and orders served upon them. Although Plaintiff's Summons and Complaint has not been formally served on Defendant Roberto Alomar, as noted previously, a copy of same is annexed hereto as **Ex. A**.

WHEREFORE, Defendant Roberto Alomar prays that the above-entitled cause be removed to the United States District Court for the Eastern District of New York

586299.1

and that this Court assume jurisdiction of this lawsuit and retain it for final disposition and for such other relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Dated:   New York, New York
         February 9, 2009

                              Respectfully Submitted,

              By:    _____
                     Luke M. Pittoni, Esq. (1597)
                     HEIDELL, PITTONI, MURPHY & BACH, LLP
                     Attorneys for Defendant
                     Office & P.O. Address
                     99 Park Avenue
                     New York, New York  10016
                     Telephone No.:  (212) 286-8585

TO:   **<u>VIA UPS NEXT DAY AIR</u>**

      Anthony J. Piancentini, Esq.
      Attorney for Plaintiff
      31 South Bayles Avenue
      Port Washington, New York  11050
      Telephone No.: (516) 944-7662

586299.1

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF QUEENS

-----------------------------------------------------------------X Index No. 2276/09

ILYA DALL

                              **Plaintiff**

Plaintiff designates QUEENS County as
the place of trial.

The basis of venue is Plaintiff's residence
and situs of action
Plaintiff resides at: 17 North Drive,
Whitestone, NY, in the County of QUEENS

-against-

ROBERTO ALOMAR

                           **Defendant.**

**SUMMONS WITH NOTICE**

-----------------------------------------------------------------X

To the above named Defendant(s):

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a Notice of Appearance, on the Plaintiff' Attorney within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:  January 6, 2009

                                           Anthony J. Piacentini, Esq.
                                           Attorney for Plaintiff
                                           31 South Bayles Avenue
                                           Port Washington, NY  11050
                                           516-944-7662

Defendant's Address: 17 North Drive
                       Whitestone, NY  (LAST KNOWN)

Notice:  The nature of this action is: Negligence. The relief sought is compensatory and punitive damages, which exceed the jurisdictional amounts and limitations of all lower courts of the State of New York.

*Upon your failure to appear, judgment will be taken against you by default for the sum of $_____ with interest from _____, 200_ and the costs of this action*

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------x Index No.
ILYA DALL

                               Plaintiff,

                                            **VERIFIED**
    -*against*-                                         **COMPLAINT**

ROBERTO ALOMAR

                               Defendant.
-------------------------------------------------------------------x

       The Plaintiff, ILYA DALL, by her attorney, ANTHONY J. PIACENTINI, ESQ., complains against the Defendant as follows:

       1.     That at all times hereinafter mentioned, the plaintiff, ILYA DALL, resides at 17 North Drive, Whitestone, State of New York, and County of QUEENS.

       2.     That at all times hereinafter mentioned, the defendant, ROBERTO ALOMAR, was and still is a resident of the State of New York, County of QUEENS, having an address at 17 North Drive, Whitestone, NY.

       3.     That at all times hereinafter mentioned, the Plaintiff, ILYA DALL, and the Defendant, ROBERTO ALOMAR, are over the age of twenty-one years.

## AS AND FOR A FIRST CAUSE OF ACTION

       4.     That on or about April, 2002, Plaintiff and the Defendant met each other and began dating.

       5.     In or around May, 2002, the Defendant, ROBERTO ALOMAR, assured the Plaintiff, ILYA DALL that he was free of all sexually transmitted diseases and, as

2

such, it would be perfectly safe for the Plaintiff, ILYA DALL, to engage in unprotected sexual relations with the Defendant.

6.     The Defendant had made these aforementioned representations to the Plaintiff on several different occasions, prior to the first time they engaged in unprotected sexual relations in the month of May, 2002.

7.     The Plaintiff and Defendant entered into an intimate, romantic relationship commencing in May, 2002, and continuously had unprotected sexual relations up until approximately February, 2006.

8.     On or about February, 2005, the Plaintiff and the Defendant commenced co-habiting together along with the Plaintiff's two children, in the State of Florida.

9.     From the year 2005 until October, 2008, the Plaintiff and Defendant continually co-habited together along with the Plaintiff's two children.

10.     In the year 2002 through 2008, the Plaintiff and the Defendant continuously resided together at, in different locations in the States of New York, Florida, and Ohio.

11.     During the year 2002 through 2003 the Defendant was employed as a professional baseball player for the New York Mets and continued to have intimate, unprotected sexual relations with the Plaintiff.

12.     In the beginning of the year 2004, the Defendant commenced having cold sores on his mouth. The cold sores continued to form on the Defendant's mouth during the years 2004 and 2005.

13.     In 2005, the Defendant ROBERTO ALOMAR, signed a new contract with the Tampa Bay Devil Rays and both the Plaintiff and Defendant resided together in the

State of Florida, and continued to engage in unprotected sexual relations based upon assurances from the Defendant that he was tested for the HIV virus and his test was negative.

14.    In March, 2005 the Plaintiff accompanied the Defendant for a physical examination that was conducted by Dr. Joseph Mace, on behalf of the Tampa Bay Devil Rays, in St. Petersburg, Florida.

15.    During the aforementioned physical examination, it was discovered that the Defendant had a blood disorder known as Thrombocytopenic Purpura, and it was found that the Defendant's blood platelets were forty-thousand instead of one hundred and fifty thousand platelets, which is normal; said condition may be related to being HIV positive.

16.    Dr. Joseph Mace advised the Defendant, ROBERTO ALOMAR, to have an HIV test performed and the Defendant, ROBERTO ALOMAR, refused to have said test performed, stating that he was tested by the Tampa Bay Devil Rays and was clear of HIV.

17.    In March, 2005, Dr. Joseph Mace prescribed steroids for the Defendant in order to re-build his blood platelets,  and on or about March 17, 2005, after suffering back and vision problems, and fatigue, the Defendant retired from his employment as an active professional baseball player.

18.    In March or very early April, 2005, the Defendant advised the Plaintiff that he was suffering from erectile dysfunction.

19.    In March or early April, 2005, the Defendant, ROBERTO ALOMAR, advised the Plaintiff, ILYA DALL, that he, the Defendant, was raped by two Mexican

4

men after playing a ball game in New Mexico or a southwestern state, when he was seventeen years of age.

20.    The Defendant today is approximately forty-one years of age and it was in the year 1985, when he was seventeen years of age that the Defendant alleges that he was raped by two Mexican men after a ball game in the State of New Mexico or another southwestern state. The aforementioned information was conveyed to the Plaintiff by the Defendant in late March or early April, 2005, while the Plaintiff and Defendant were residing together in Florida, and were still having unprotected sexual relations at that time.

21.    In April, 2005, the Plaintiff and Defendant, while they were residing together in Florida, the Defendant developed a consistent cough and was experiencing extreme fatigue, and spent many days confined to his bed.

22.    In April or May of 2005, while the Plaintiff and Defendant were residing in Florida, and having unprotected sexual relations, the Defendant ROBERTO ALOMAR, developed white spots on his mouth and throat.

23.    In April or May, 2005, the Plaintiff, ILYA DALL, observed white spots on the mouth and throat of the Defendant, ROBERTO ALOMAR.

24.    In April or May, 2005, Dr. Joseph Mace advised the Plaintiff and the Defendant, that the Defendant had a condition known as thrush, which is a yeast infection in the esophagus which is associated with AIDS.

25.    In April or May, 2005, Dr. Joseph Mace again advised the Defendant to have an HIV test performed, which stands for Human Immune Virus, and Dr. Joseph Mace also prescribed antifungal medication for the Defendant.

5

26. In April, 2005, the Defendant, ROBERTO ALOMAR, refused to submit to an HIV test, at which time the Defendant told the Plaintiff that he was recently tested for HIV/AIDS and was not infected.

27. In April, 2005, the Plaintiff and Defendant continued to have unprotected sexual relations, in reliance upon the Defendant's statements.

28. In April, 2005, the Defendant continuously advised the Plaintiff that he had been tested many times and advised her that in his words "I don't have HIV."

29. Upon information and belief, the Defendant, ROBERTO ALOMAR, in April, 2005, lied to and purposefully misrepresented his physical condition to the Plaintiff, and refused to be tested for HIV because he did know or should have known that he was either HIV positive or was suffering from full-blown AIDS.

30. Upon information and belief, the Defendant misled the Plaintiff into believing that he was free from HIV and/or AIDS and, as such, it would be safe for the Plaintiff to continue to have unprotected sexual relations with the Defendant.

31. The Defendant, ROBERTO ALOMAR, knew or should have known that he was suffering from HIV and/or AIDS, and that he was endangering the health and well-being of the Plaintiff by continuing to have unprotected sexual relations with the Plaintiff.

32. That in April, 2005, the Defendant misrepresented his HIV and/or AIDS status to the Plaintiff, so that he could continue to enjoy unprotected sexual relations with the Plaintiff, and showed a wanton disregard for the health and well-being of the Plaintiff by continually exposing her to the HIV or AIDS Virus.

33. The Defendant, ROBERTO ALOMAR, in April, 2005, knew that HIV/AIDS could be transmitted to the Plaintiff by having unprotected sexual relations with the Plaintiff, but the Defendant, in failing to advise the Plaintiff that he was suffering from HIV or AIDS, endangered the Plaintiff's life, and showed no concern for the health and life of the Plaintiff.

34. Even though the Defendant knew that there was a strong likelihood that he could infect the Plaintiff with HIV or the AIDS virus, the Defendant continued to have unprotected sexual relations with the Plaintiff, and the Defendant knew that AIDS is a deadly disease with no known cure.

35. In late March, or early April, 2005, the Defendant, ROBERTO ALOMAR, had back and eye trouble, along with fatigue, and retired from baseball.

36. In August, 2005, the Defendant and the Plaintiff, continued to co-habit and relocated and moved to Cleveland, Ohio.

37. During August, 2005, relying on the representations made to the Plaintiff by the Defendant on numerous occasions, consented to and continued to have unprotected sexual relations with the Defendant, ROBERTO ALOMAR. The Plaintiff and the Defendant were residing together and had unprotected sexual relations while they were living in Cleveland, OH.

38. In December, 2005, the Plaintiff and Defendant returned to New York and stayed at the Plaintiff's mother's house located at Whitestone, Queens County, New York, and engaged in unprotected sexual relations while visiting her for the Christmas and New Year's holidays.

7

39.    In December, 2005 or early January, 2006, the Defendant, ROBERTO ALOMAR, was presenting the following symptoms: continuous cough, fatigue, dry skin, pallor looks, shingles, was having problems walking and at times was unable to make it to the bathroom.

40.    In February, 2006, the Defendant accompanied by the Plaintiff, went to Mary-Mount Hospital, in Cleveland, OH, and was examined by Dr. Carlos Perez. The Defendant was given medicine for the Defendant's herpes cold sores and was advised by Dr. Carlos Perez that he must have an HIV test performed.

41.    In February, 2006, when Dr. Carlos Perez advised the Defendant ROBERTO ALOMAR, that he get an HIV test. This was the third request made by a licensed physician to have an HIV test performed; the first two requests were strongly recommended by Dr. Joseph Mace, in Florida.

42.    On or about January 27, 2006, the Defendant was tested for HIV and the test results of him being HIV positive was given to him and the Plaintiff on or about February 6, 2006. Upon learning of the Defendant's positive HIV status, the Plaintiff was deeply upset, shocked, dismayed, extremely depressed, and was suffering extreme distress after she was advised that the Defendant, ROBERTO ALOMAR, was HIV positive.

43.    Shortly after the Defendant was found to be HIV positive, the Plaintiff was tested for HIV and fortunately, the test was negative at that time.

44.    On February 15, 2006, the Plaintiff and the Defendant together went to see Dr. Steven Bass, a disease specialist, located in Cleveland, Ohio, and after administering x-rays and discovering a mass in the Defendant's chest, and examining the Defendant,

8

Dr. Bass advised the Plaintiff and the Defendant, that the Defendant was suffering from full-blown AIDS.

45.    On or about February 21, 2006, the Plaintiff observed the following symptoms in the Defendant: purple skin, too sick and weak to walk, needed to be in a wheelchair at the airport, was foaming at the mouth, couldn't swallow, and a spinal tap proved the Defendant, ROBERTO ALOMAR, was indeed suffering with full-blown AIDS.

46.    On February 6, 2006, the Plaintiff completely stopped having unprotected sexual relations with the Defendant because it was at this time that she knew the Defendant was suffering from full blown AIDS and that the misrepresentations by the Defendant ROBERTO ALOMAR, had put her at risk for contracting HIV and the possibility of HIV becoming AIDS and ending the life of the Plaintiff.

47.    Sometime in 2007, the Defendant, ROBERTO ALOMAR, bought a home in Whitestone, Queens, and lived together with the Plaintiff and her two children up until October, 2008.

48.    That upon information and belief, the Defendant had reason to know he was HIV positive or had AIDS prior to having unprotected sexual intercourse with the Plaintiff from the years 2002 through February 6, 2006.

49.    That the Defendant knew or should have known since he was HIV positive or suffering from AIDS, that having unprotected sexual relations with the Plaintiff was jeopardizing the health, well-being and life of the Plaintiff which caused her to have a fear of contracting AIDS often referred to as AIDS-Phobia.

50. That the Plaintiff did develop AIDS phobia after learning that the Defendant was suffering from full-blown AIDS in February 2006.

51. That scientific studies have shown that unprotected sexual intercourse between an unprotected male with HIV or AIDS and a female, can infect the female with HIV or the AIDS virus.

52. It is a scientifically accepted fact that the transmission of HIV and/or AIDS from one infected person to an uninfected person can be brought about by having unprotected sexual intercourse.

53. That the Plaintiff was exposed to the risk of contracting HIV and/or AIDS when she had unprotected sexual relations with the Defendant, which commenced on or about May, 2002 and continued up until February 2006, when the Plaintiff became aware that the Defendant, ROBERTO ALOMAR, was suffering from HIV which had developed into full-blown AIDS.

54. That the Defendant's negligent behavior, proximately caused the Plaintiff to suffer from fear of contracting AIDS, also known as "AIDS phobia" after the Plaintiff was advised with the Defendant in or about February, 2006, that the Defendant was infected with HIV which had developed into full-blown AIDS.

55. That the continuous misrepresentations made to the Plaintiff by the Defendant, claiming that he did not have HIV or AIDS, which the Plaintiff relied upon before having unprotected sexual relations with the Defendant caused the Plaintiff to suffer severe emotional distress after learning that the Defendant was, in fact, suffering from HIV which had become full-blown AIDS.

56.     After learning in February, 2006, that the Defendant was suffering from AIDS, the Plaintiff immediately experienced terror and severe emotional distress when she learned that she was exposed to HIV and AIDS and as a result of her exposure to HIV and AIDS that there was the possibility of her developing HIV and AIDS, which caused her immense emotional, psychological and mental suffering because there is no known cure for the AIDS virus in the scientific and medical community.

57.     The Plaintiff knew, as did the Defendant, that having unprotected sexual relations with a person having AIDS, could transmit the AIDS virus to the non-infected person through unprotected sexual intercourse.

58.     The Plaintiff also became severely emotionally distressed when she realized that both of her children were exposed to the AIDS virus by the Defendant, since they spent a lot of time with the Defendant and had, on many occasions prior to February 2006, kissed the Defendant and was kissed by the Defendant.  Since the Plaintiff and her children shared the home with the Defendant and utilized the same bathroom facilities, they came into contact with toothbrushes and other items used by the Defendant which may have contained Defendant's saliva and blood, which may have exposed them to the AIDS virus.

59.     That the Defendant knew or should have known he was HIV positive or suffering from AIDS when he was having unprotected sexual relations with the Plaintiff.

60.     That the Defendant knew or should have known that having unprotected sexual relations with the Plaintiff during those times could cause the HIV or AIDS virus to be transmitted to the Plaintiff, which unreasonably exposed the Plaintiff to the risk of contracting HIV and/or AIDS.

61.     That the Defendant had a duty to refrain from unprotected sexual intercourse with the Plaintiff when he knew or should have known he was HIV positive or was infected with full-blown AIDS.

62.     That the Defendant breached his duty to refrain from having unprotected sexual relations with the Plaintiff when he participated in unprotected sexual relations with the Plaintiff.

63.     That the breach of that duty to the Plaintiff including the misrepresentations by the Defendant that he was not HIV positive or suffering from AIDS was the proximate cause of the Plaintiff's suffering severe emotional distress immediately after discovering that the Defendant was HIV positive and that the disease had progressed to full-blown AIDS.

64.     That the aforementioned actions of the Defendant in having unprotected sexual relations with the Plaintiff while he was HIV positive and/or suffering full-blown AIDS caused the Plaintiff to suffer from severe emotional distress, terror, fear of contracting HIV and AIDS, depression, severe unhappiness, fear that her children were exposed to the AIDS virus, which has caused her constant worry, fear, sleeplessness, anxiety, weight-loss, and dread that she may one day test positive for HIV and possibly develop AIDS.

65.     That the Plaintiff suffered severe emotional distress, psychological and mental injury as a result of the misrepresentations and acts on the part of the Defendant mentioned in the preceding paragraphs.

66.     That the Plaintiff is under the care of a doctor and other medical personnel in an attempt to recover from the serious, severe and permanent emotional, psychological

12

and mental injuries suffered as a result of the negligent infliction of emotional distress by causing the Plaintiff to be exposed to contracting HIV and developing AIDS, which is also commonly known as the "AIDS phobia."

67.    The injuries suffered by the Plaintiff as a result of the actions on the part of the Defendant are continuing, serious, severe and permanent.

68.    As a result of the Defendant negligently causing the Plaintiff extreme emotional distress the Plaintiff has been damaged and is entitled to compensatory damages in an amount to be determined at the time of trial of the within first cause of action.

## AS AND FOR A SECOND CAUSE OF ACTION

69.    The Plaintiff repeats and reiterates all of the allegations contained in the preceding paragraphs numbered one through sixty-eight, with the same force and effect as if they were fully set forth herein.

70.    That the Defendant, ROBERTO ALOMAR, having unprotected sexual relations with the Plaintiff herein when the Defendant, did know or should have known that he was HIV positive and/or that he had contracted AIDS, showed a complete wanton and gross reckless disregard for the health and well-being of the Plaintiff, and that the wanton and gross reckless disregard for the dangers the Defendant exposed the Plaintiff to were, in fact, so outrageous that the acts of the Defendant constitute gross and wanton negligence on the part of the Defendant.

13

2009/2276 SUMMONS WITH NOTICE & VERIFIED COMPLAINT (Page 14 of 19)

71.     It was grossly negligent for the Defendant to have unprotected sexual relations with the Plaintiff when the Defendant knew or should have known that he was HIV positive and/or suffering from AIDS because he exposed the Plaintiff to a virus which he knew could be transmitted to the Plaintiff by having unprotected sexual intercourse and sexual relations, and the Defendant also knew that there is no known cure for AIDS and, as such, exposed the Plaintiff to the possibility of causing her death.

72.     As a result of the acts of gross negligence on the part of the Defendant in causing the Plaintiff extreme emotional distress, in this case, also known as the "AIDS phobia," the Plaintiff has suffered permanent emotional, psychological, and mental injuries and demands judgment in an amount to be determined at trial. The amount to be demanded at trial exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A THIRD CAUSE OF ACTION

73.     The Plaintiff repeats and reiterates all of the allegations contained in the preceding paragraphs numbered one through seventy-two, with the same force and effect as if they were fully set forth herein.

74.     That even though the Plaintiff has continuously tested negative for HIV, she still suffers severe and permanent emotional distress, and Post Traumatic Stress Syndrome as a result of the acts on the part of the Defendant previously set forth herein.

75.     That as a result of the outrageous conduct of the Defendant, whereby the Defendant exposed the Plaintiff to the possibility of death by exposing the Plaintiff to the risk of contracting HIV and the possibility of it developing into full-blown AIDS and

14

causing the Plaintiff the fear of contracting AIDS also known as "AIDS phobia" the Plaintiff now suffers from Post Traumatic Stress Syndrome, which is permanent and may require the Plaintiff to undergo continual treatment for Post Traumatic Stress Syndrome for the rest of the Plaintiff's life.

76.    The Plaintiff now suffers from the following symptoms: depression, continual anxiety, worry, weight loss, and interrupted sleep, difficulty performing daily chores, extreme unhappiness, loss of energy, and loss of direction in the Plaintiff's life.

77.    That as a result of the negligent and gross negligent acts on the part of the Defendant, the Plaintiff suffers from Post Traumatic Stress Syndrome and demands judgment in an amount to be determined at trial. The amount to be demanded at trial exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A FOURTH CAUSE OF ACTION

78.    The Plaintiff repeats and reiterates all of the allegations contained in the preceding paragraphs numbered one through seventy-seven, with the same force and effect as if they were fully set forth herein.

79.    That as a result of the Defendant's outrageous, grossly negligent acts, showing a wanton and reckless disregard for the rights of the Plaintiff and the health and well-being of the Plaintiff by the Defendant having unprotected sexual relations with the Plaintiff when the Defendant did know or had many reasons to know that he was, in fact, infected with the HIV and/or AIDS virus and that he could transmit these deadly diseases to the Plaintiff justify an award of punitive damages against the Defendant.

15

80.     The conduct of the Defendant, ROBERTO ALOMAR, towards the Plaintiff is so outrageous with wanton and reckless disregard of the health, safety and well-being of the Plaintiff, that it was the proximate cause of the plaintiff's extreme emotional distress, illness and her Post Traumatic Stress Syndrome, which resulted from the Plaintiff's fear of the possibility of contracting AIDS by her exposure to said virus from the Defendant, ROBERTO ALOMAR.

81.     That as a result of the foregoing, the Plaintiff was caused to sustain serious injuries and to have suffered pain, shock, mental anguish; that there injuries and their effects will be permanent; and as a result of said injuries, Plaintiff has been caused to incur, and will continue to incur, expenses for medical care and attention; and as a further result, Plaintiff was and will continue to be rendered unable to perform Plaintiff's normal activities and duties and has sustained a resultant loss therefrom.

82.     That as a result of the foregoing, Plaintiff is seeking punitive damages in an amount not less than Fifteen Million [$15,000,000.00] Dollars.

WHEREFORE, the Plaintiff demands judgment over and against the Defendant as follows:

1.  Judgment against the Defendant on Plaintiff's First Cause of Action for the negligent infliction of severe emotional distress on the Plaintiff, in an amount to be determined at the trial of this action;

2.  Judgment against the Defendant on Plaintiff's Second Cause of Action for the gross negligent and wanton infliction of severe emotional distress upon the Plaintiff, in an amount to be determined at the trial;

3. Judgment against the Defendant on Plaintiff's Third Cause of Action for the Defendant's causing the Plaintiff to suffer Post Traumatic Stress Syndrome, in an amount to be determined at trial;

4. Judgment against the Defendant on Plaintiff's Fourth Cause of Action for punitive damages in an amount not to exceed Fifteen Million [$15,000,000.00] dollars;

together with the interest, costs and disbursements and legal fees in this action, and such other and further relief as this Court deems just, proper and equitable.

Dated: Port Washington, NY
      January 6, 2009

Yours, etc.

ANTHONY J. PIACENTINI, ESQ.
Attorney for Plaintiff
31 South Bayles Avenue
Port Washington, NY 11050
(516) 944-7662

17

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**
------------------------------------------------------------------x  Index No.

ILYA DALL

                              Plaintiff,

                                                 **VERIFICATION**

     *-against-*

ROBERTO ALOMAR

                              Defendant.

------------------------------------------------------------------x

*STATE OF NEW YORK)*
*COUNTY OF NASSAU ) ss:*

     I, ILYA DALL, am the Plaintiff in the above-entitled action.  I have read the foregoing Summons and Complaint and know the contents thereof.  The contents of the Summons and Complaint are true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                          _____
                                          ILYA DALL

Subscribed and sworn to before me
this 12 day of January, 2009 2010

_____
Notary Public

ANOTHY J. PIACENTINI
Notary Public, State of New York
No. 30-4759903
Qualified in Nassau County
My Commission Expires July 30, 19 2010

17

Index No.

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF QUEENS

ILYA DALL,

                                           Plaintiff

      -against-

ROBERTO ALOMAR,

                                           Defendant.

# SUMMONS
# and
# COMPLAINT

**ANTHONY J. PIACENTINI, ESQ.**
Attorney for Plaintiff
31 South Bayles Avenue
Port Washington, NY 11050
Telephone (516) 944-7662 • Fax (516) 944-3032

Signature Pursuant to Rule 130-1.1-a

ANTHONY J. PIACENTINI, ESQ.

$210.00         Check
$210.00         Total
2276/2009 DALL, ILYA vs. ALOMAR,RO
                Other
$210.00         Tr. 1576621
Paym 1317258 01/30/2009 2:55p
Queens County Clerk's Office